506-59 by Del Vega, and now by Sabrina Ostrom, assisted by Michael Harroun, and lead by Kay Johnson. Let's see here. This is Ostrom? Yeah. Pronounce that right? Yes, Ostrom. Okay. First, let's see if I actually said it right. May it please the Court, Counsel. Good afternoon. Good afternoon. As I was preparing for this, for this today, I was kind of struggling with what this case is really about. And about four hours ago, I kind of had an ah-ha moment, and threw out my outline and started a new one. So I would welcome questions. You didn't try the case, did you? What's that? Did you try the case? No, I wasn't. Well, that's better argument than a word is. So, Your Honors, my ah-ha moment, though, was this case, what it's really about, is this October 30, 2004, agreement. It's our position that in our allegations that the parties, a little bit of background, is that the parties had entered into this oral agreement to engage in a joint venture. And this oral agreement occurred in 1991. And they had orally agreed to buy and sell real estate for profit. The parties would buy properties and then reinvest the income into other properties and then share the profits. But there was, in the interim, this October 30, 2004, agreement. And it's attached in the record as C-222. And it's a real basic agreement. It just recites that the parties, that the defendant, I'm sorry, that the plaintiff has an interest in some eight properties that are enumerated in that agreement, as well as that they're going to share in the profits 50% equally, and that they're going to be up in a special account, and they're going to be agreed that they're going to be dispersed. It's our position that that October agreement was just a declaration or a memorandum of their already ongoing joint venture. And there, and nowhere in the record, Your Honor, have we contended that this was, that this settled the issues, that this agreement settled any issues, nor has the defendant alleged or asserted that this settled all the issues concerning this real estate. There was some arguments made that there was, because the parties were also engaged in other businesses, primarily a partnership called Angel Auto that dissolved in another case in Iroquois County. And the defendant has alleged that, pursuant to that settlement agreement, that it resolved all the issues. But never this October agreement, that it resolved all the, the October agreement by itself resolved all the issues. Nonetheless, the trial court went on to find that the agreement was an affirmative act by the plaintiff that induced the defendant to believe that all issues had been settled, and that it was evidence of an actual controversy. For those reasons, the trial court found that the plaintiff's claims were barred by the statute of limitations and collateral estoppel. I think it's really important to note first that those defenses were not before the trial court at that time. The only motion that was on file was the defendant's motion to dismiss. And the affirmative matter that was alleged in that motion was that the claims were barred by a prior judgment, and that it was barred by the statute of fraud. So the case law is clear that it's an error as a matter of law for the trial court to raise affirmative matters to the sponte. So I think that that part of the dismissal based on the affirmative matter can be reversed as a matter of law. Nonetheless, the trial court decision should also be reversed because there's no evidence that this October 30, 2004 agreement was a misrepresentation that induced the defendant to believe that anything had been settled, nor was it evidence of an actual controversy. And for the second reason, that this October agreement is actually evidence of the party's intent to establish a joint venture. As to the first reason that this October 2004 agreement was not a misrepresentation or an actual controversy, that for finding a collateral estoppel, the court must find that there was a misrepresentation by the plaintiff that induced the defendant to act in any way that would prejudice the defendant. And of course, your review is de novo. There's no allegation, and I would also point out, though, even though it's de novo, that the trial court did not even make a finding of prejudice. It merely found that that 2004 agreement induced was an affirmative action by the plaintiff that induced the defendant to believe that all matters had been settled. Nonetheless, there's no allegations, there's no assertion by the defendant that there was any misrepresentation by the plaintiff or any inducement or any prejudice. Even more specifically, there's no allegations or nothing contained in the record that would indicate that the defendant believed that on October 30th of 2004, when they had that meeting that resulted in that agreement that same day, that they intended to settle all the issues. In fact, paragraph 8 of the defendant's motion to dismiss, and I'll refer to the record, C-321, the defendant states, quote, the parties clearly intended to memorialize their agreement concerning certain properties by executing the agreement. Memorialize, not settle. Nowhere in that 2004 agreement does the word settle come up. And it's important to note, too, that the defendant was represented by counsel at that meeting. The plaintiff was not. The counsel was present, and there's no words of settle, release, waiver, nothing. Memorialize what? Their agreement concerning the eight properties. So what the quote was, they memorialized their agreement concerning certain properties, which were the eight properties. Because we allege that there's... Well, doesn't that seem to suggest, at least to somebody like me, that you've got an agreement as to those properties, and this document memorializes that agreement, which might be a settlement or an agreement not to agree, or whatever it is. Well, Your Honor, and that goes to what evidence is on the record. So in response to their motion to dismiss, we did attach the affidavits of the party's bookkeeper, Doris Huebner, and that's, I'll cite to the record, 409, as well as the affidavit of the defendant, or of the plaintiff's, C-411, that the purpose of that meeting was just because the plaintiff was concerned about the fact that these properties were only titled in the defendant's name, and that if something should happen to the defendant, that there was nothing in the writing that the plaintiff was entitled to those. So it wasn't this meeting to settle. The evidence, the only evidence that's in the record, is that it was more of this meeting to be able to protect the plaintiff's interest against their parties. So they were just reducing what they were doing into writing. So that's why I say it's our position that it's a memorandum or a declaration of this ongoing venture. And again, that is the only... I know that they were going through some troubles and had to use car dealership. They were, you know, untangling themselves there. But specifically in terms of, like, the houses and reselling those, flipping these houses, wasn't the defendant's son, wasn't there some discussion that he said, hey, I'm going to start doing this with my own family, and so we're not going to do this anymore. So they said, you know what, we're going to make this list of all the properties that we've done together or that we're doing together. Isn't that the genesis of this October 30th thing? No, and I'm also going to note that the Angel Auto business wasn't an issue until 2006. This agreement was in 2004, before that was even an issue. But yes, I forget the exact date, but it was in 2003 that the defendant came to the plaintiff and said, I'm not going to buy any more properties with you anymore. But that doesn't, there's no allegation that that served as a termination of their joint venture. But isn't that why they made the list, though, like, hey, we need to know what we have together. Isn't that? The evidence doesn't support that. There's no allegations of that. That conversation occurred in 2003. This other agreement occurred in 2004, so a whole year later. And it's, so that's a difficult answer because it's not part of the record, but the parties had been sued on another matter by the defendant's brother, trying to assert that he had an interest in that Angel Auto business. So it's not part of the record, but it doesn't, there isn't anything in the record either that indicates that that was the reason why they entered into this agreement. And nor, the plaintiff, the defendant has never asserted that that was why they entered into this agreement. And so I'll move on to the statute of limitations. The court found that the October 30th agreement demonstrated knowledge of an actual controversy. Again, this is reviewed de novo, but it's a 619, so the court's to take the well-planned facts, or is to admit the legal sufficiency of the complaint. We allege that there was a joint venture, so that means that partnership principles should apply. And as partnership principles is that the statute of limitation doesn't run for an accounting as we're seeking until the joint venture is dissolved. And there's no evidence that the joint venture had ever been dissolved prior to that. In fact, it was still ongoing, they still had these properties that they were collecting monies on. And I also note that even after this agreement in 2004, they subsequently bought another property in 2005 that they sold in 2008. And as of the date of the filing, or as the date of the court's decision, they still had two properties, one installment contract and one that was receiving rental income. And so this goes on to the second reason why the trial court's decision should be reversed, and that is that the October agreement demonstrated a set of facts that would entitle the plaintiff to relief. When reviewing a 615 motion, you should not affirm if there's any set of facts in which the plaintiff is entitled to relief. We allege that they entered into this agreement in 1991 that of buying and selling property, they did in fact buy and sell property, that the defendant contributed by obtaining financing and putting the property on the means, the plaintiff contributed by locating buyers and renters, and in fact one of those buyers was his brother that he sold the property to, and so they had a joint effort, they had a joint proprietorship in this joint venture. But this agreement also really demonstrates that there was an intent for the parties to be engaged in this venture of buying and selling properties. This 2004 agreement was entered into, the properties that were listed in this 2004 agreement were all properties that had already been purchased. They were all properties that were already in the defendant's name. What reason does the defendant have to give a half interest, half of the profits, to the plaintiff but for that this was a memorandum or declaration of their ongoing joint venture? This was only a 615 motion, so we're only reviewing the four quarters of the complaint. There was some kind of... I'll scratch that, sorry. This is a 615 motion, so all inferences should be drawn in favor of the plaintiff. The plaintiff's logical inference, reasonable inference that can be drawn of this agreement is that it was just a recording, a declaration of their already agreement. Your Honor, and then I do the motion to amend. We did make an oral motion to amend at the conclusion of the hearing, and the court denied it. We're going to concede that without having filed a written proposed motion to amend, that the court's not able to ascertain whether or not that amendment would cure the defect. However, the court does also have power, to allow, to direct the lower court to grant leave to amend the complaint. And so what we're asking, because the trial court did say that there wasn't, that the claims weren't clear and concise, in the record that you have available for you to review, are those affidavits attached to the motion, the response to the motion, to dismiss of the affidavit of the defendant as well as the bookkeeper, Doris Huebner, that the defendant stated, or no, it was held out to the bookkeeper, that he was, that the two were partners in this real estate. And that involved all these properties up until a certain property. But then... Well, let me see if I understand. Are you conceding that that third amendment complaint needs some help, needs amendment to be a good? I am not. The court would find that the, so the issue with that, Your Honor, is that the court had found that it was, that the complaint was neither clear nor concise. However, the court cites to, I think it was Enri, yeah, Enri, the estate of Lipschick, and that case actually found that dismissal was improper. And so long as the complaint contained enough information to reasonably inform the opposite party of the nature of the claim, it should not be deemed in bad substance. Isn't Illinois a fact-cleaning state as opposed to a notice-cleaning state? It is. And I don't believe that, I believe that we've applied sufficient facts to demonstrate that there is a set of facts that would entitle the defendant to relieve. However, if the court finds that it's not clear and concise, but still based on the reasons, I would like an opportunity to be able to attach those just to clear it up. Well, and let me just, along that line, okay, this is a third-amendment complaint. Does the trial judge have to allow infinite amendments? How many times does the plaintiff get a medical complaint before the trial judge says enough? Well, it is. It is liberal amendments that there allows, that the trial judge is allowed to amend. But yeah, no, it's not, I agree that it's not infinite. It has to be where it allows it to be able to cure the defect. But as I said in my brief, there was, I know it's a third-amendment complaint. However, the trial court had only dismissed it once. The rest was done by confession. So I do think that we should be, if the court finds, which I disagree with, that it's not, that the complaint is not confusing and it is clear that there's a joint venture, but I think that we should be able to amend the complaint to be able to include the allegations and the affidavit. Because I really, I mean, I think that we have enough in the complaint, but I think the affidavit of Dorsey Merwer, that she, it's the, that the defendant is making admissions, that they are counters and holding it out. I think, oh, can I just? I understand. And you'll have some rebuttal. Okay. So, Your Honor, I just, I would like to just say, ask that this court reverse the trial court's dismissal of the complaint for the reasons discussed today and remand for further proceedings that lead them in the complaint. And I stand on my brief for any arguments that I do not make here today. Thank you. Ms. Johnson. May it please the court, counsel. Good afternoon. My name is Kay Johnson, and I represent Michael Heroun of Monarga, Illinois. I am a little surprised to hear counsel rely upon that October 30th, 2004, written agreement that we have been throwing in front of the judge since this complaint was initially filed, saying that was our agreement. There are no other agreements. And so I'm a little confused about the direction that counsel is talking about. This, these complaints have been extremely difficult to address. The first complaint that was filed in 2011 was for a partition. It alleged that there should be a partition of 51 separate parcels of property. So we had to go through all 51 to determine what the ownership was on those. When we came up on our motion to dismiss, it was confessed, and a plaintiff was given leave to file a first amended complaint. In the first amended complaint, then,  and then there were 40 parcels rather than 51. So we had to go through and see what parcels those were, ownership, and so on. What happened in 2011? I don't know. I'm sorry. I don't mean to be snidey with you. No, no. I just, you don't know? You don't know? I don't know. And so we were scheduled to go to trial, and it was in the middle of a plaintiff's deposition where I was asking him about each parcel that counsel for the plaintiff stated that they wanted to file an amended complaint. And so we terminated the deposition. Then the second amended complaint still contained 40 parcels as well and alleged a joint venture. And the trial court at that time. And what's the nature of the action underlying this second amended complaint? That was joint venture as well, if I'm not mistaken. But it was the partition action, wasn't it? The first one was the partition action, and we filed a motion to dismiss. They confessed it, and then it was a joint venture agreement. Okay. And what action, what relief is being sought, to your understanding, on the second amendment? To declare the existence of a joint venture and to demand ultimately an accounting. Not partition, but just an accounting. That's on the second. The theory being it's an ongoing venture and there needs to be an accounting to the parties to the venture. That's correct, Your Honor. Okay. We responded saying no. We had an agreement concerning eight properties, and it was contained in an agreement dated October 30, 2004. This is it. We also alleged that the parties had an auto dealership partnership which was dissolved as a result of a lawsuit by the plaintiff against the defendant, my client, and that we said that those issues were resolved because during the settlement of that partnership issue,  and some of those properties were still listed on that complaint that we were dealing with. And so we said no. Those were taken care of. We had this agreement of October of 2004, but we don't know what the basis of all these other properties that they allege we own. So we said that there was, we denied that there was a joint venture, and the court agreed with us on the second amended defense. Now we had also, one of our trial judges retired, and so then another judge took this case over as well. And then when the third amended complaint was filed, we now are, they are alleging that there's a joint venture as to 36 properties, down from the original 51 to 40, now to 36. What happened to those four? Okay. Your Honor, I cannot answer that question. What? Yeah. I don't know. And then they also included a cause of action for ouster. And we filed a motion to dismiss the third amended complaint and had a affirmative defense supported by affidavits that said the keys were always hanging, to that building were always hanging in the same place. Let me ask you that. I have another question about that. So you're saying there was no joint venture. Okay. These keys to this property, was it one of those eight properties? It was, Your Honor. It was the one that was the, it was. And that's the one that the court found troublesome in his decision, the trial court's final order. But, yes, the keys belonged to that building on Grant Street is where it was. Which is one of the eight properties involved in the settlement of the lawsuit in terms of the car dealership. It was one of the eight properties that was listed in the 2004 written agreement. Okay. All right. Okay. Because the suggestion that, well, you could have come and got the keys and gone at any time you wanted suggests to me that they still have a joint relationship, at least with respect to that piece of property. They do still have a joint relationship with respect to that piece of property. That's correct, Your Honor. That's correct. And to those other properties. To what other properties? To those seven properties. No, I take it that the plaintiff's saying that, okay, in addition to those, we've got these other properties that we've got a joint agreement. That's my understanding, Your Honor. And you're saying, no, you don't. That is correct. And so how do you resolve that on a motion to dismiss? Well, Your Honor, what we stated is that, number one, the complaint did not adequately allege the existence of a joint agreement, a joint partnership. The mere assertion that one existed is not enough. We stated to support the existence of a joint venture, and the court agreed with that. Moreover, we drew the court's attention to this 2004 agreement and said that's our agreement. We also drew attention to the court that, well, number one, that the complaint did not, wasn't well pled because they included some properties that had already been deeded over to the plaintiff beforehand anyway. And we never got to a question of, we never got past the deposition, half deposition of the plaintiff, unfortunately. But the complaint states that between 1991 to the present time, and this was filed in 2011, that there was this ongoing joint venture going on. Yet in their amended complaint, in that third amended complaint, they're saying, well, he told my client in 2003 that he no longer wanted to have anything to do with a joint venture anymore, with respect to any more properties. So I'm a little confused on, you know, which is it? Are they for properties that were somehow purchased prior to 2003? And granted, my client bought and sold these, his allegation, his position is, I bought and sold these properties. And it's now in 2011, after we've gone through this horrible partnership breakup, and we finally got that settled, and then a year later you've now filed suit against me on 50 properties, and I've already bought and sold them, and I've never heard this before. And so if there's a lack of accounting or whatever, boy, 1991 to 2011 is 10 years. You know, why are we hearing about it now after we just gave him properties in a settlement agreement for our partnership? And so that's where we talk about the prejudice. That's where we talk about matches. Oh, I'm sorry. And that's where we also talk about, you know, that's where we also raise the issue that there is no existence of a joint partnership agreement. He's just merely saying, okay, I told him about these properties, he financed it, he bought them, and I share in the profits. Okay, does it say anything about, and usually partnership agreements would say, number one, there has to be a meeting of the minds, and there definitely has not been a meeting of the minds. There has to be an agreement as to the contribution of each party, the sharing of the profits. When are we going to meet? How are we going to do an accounting? Is it going to be 10 years from now after we buy this property? What are the obligations of our parties? What agreement do we have with each specific parcel of property? These are homes. Some of them, well, I understand one is a vacant lot. You know, how are we going to do profits on this? If it's a vacant lot, how do you get rents? You know, how are we going to determine how property taxes are paid if it's non-income producing property and so on? There are none of those allegations included in what the agreement, alleged agreement, was. For the eight properties for the agreement, I mean, it seems to cover how things like that are going to be paid. It does not address whether or not, you know, these are going to be sold or what kind of accounting there's going to be. It just says that, you know, they agree about the ownership of these properties and that they're titled in their client's name, but that there's an understanding that there's going to be an equal disbursement if they're sold. Also, they share equally in the expenses of them, but it doesn't really make sense. Excuse me. That is correct. And, Your Honor, it was represented, I think, to the court that Mr. Huron had an attorney present to draft that document and the defendant did not. I'm not aware if there was ever an attorney present to draft that. I don't know. I think it was just between them. The person who notarized it is that same Mrs. Huebner who was the bookkeeper at the business at that time. What we have to look at, however, is the standard of review in this case, and that's whether or not the trial court abused its discretion in, number one, finding that there was no evidence of or in the pleadings of a joint venture, and more importantly whether or not the trial court erred in granting defendants oral motion to amend its pleadings. And so we have to look at the standard that we have here and we have to... Well, isn't a dismissal on motion, isn't that the noble review? Yes. But I also think, too, that the court, I think that in reviewing the court's decision, maybe the justices could understand the frustration that the court was experiencing in this case and considered whether or not an amended pleading would cure the defects that were complained of and whether or not another party would suffer prejudice in this case or be caught by surprise. The affidavit of Mrs. Huebner attached to the third amended complaint was certainly something new. However, we also, meaning Mr. Haroun, was required by the court to produce a number of years of tax returns that were reviewed by the court in camera. And Judge Lesfeld opined that after his review, he found that there was no evidence in the tax returns that were filed by my client to suggest a joint venture or a joint enterprise. That was two minutes. And so that certainly, and then we had to produce four more years of that as well. And also, I think, too, that the court probably looked at, and I think correctly so, whether or not the proposed amendment would have been timely. And this, again, was a matter that was filed in 2011. And I don't know that it would have saved the defects in the complaint. So for these reasons and for the reasons set forth in my brief, we respectfully request that this honorable court affirm the rulings of the trial court in this matter. Thank you. Thank you. Just a last question. Does the statute of refrains require that a joint venture with respect to ownership of real estate be in writing? I don't believe that it does. I think that counsel is correct in that. If it's an ongoing partnership, I don't think it does. Again, we, however, deny the existence of a joint partnership.  Where did this review of your client's tax returns come in? At what stage of proceedings or what's going on there? It was done by Judge Lessfeld, and it was, if you'll bear with me, he did it in 2015. We were getting ready to proceed to trial on this case, and then there was a request for discovery, and they asked for his tax returns. And so the court took that issue under advisement. Well, he reviewed those tax returns and issued a decision in July of 2015 and found that there's nothing on the returns on the issue of a joint venture, and he says there's no need for an accounting if there is no joint venture. So he made a finding, no joint venture. He stated the docket record reflects, in quotes, there's nothing in the returns on the issue of a joint venture. Well, that's as to admissibility of publication of tax returns in support of a vermin in the plaintiff's pleadings, right? Well, yes, sir. He's saying that it's... Okay. But that... It also doesn't prove the existence of a joint venture. It doesn't settle his case as to the term of a joint venture. That's correct. Okay, thank you. Yes, sir. Thank you very much. Thank you, Ms. Johnson. Disaster is a rebuttal. Excuse me. Your Honor? Just before you go, let's see if we can agree on standard of review. Our review of the dismissal of the Third Amendment complaint is deniable, right? Yes. And that if... the judge's ruling on the motion to amend is abuse of discretion, is it? Correct. Okay, fine. And with that, Your Honor, I'm going... Like I said, I concede that you're not going to be able to make it without us having filed our proposed... a written proposed motion to amend, but I'm just saying... I'm asking that with your inherent power to allow... to direct the lower court to allow the amendment. I'm asking to allow that with... with the... seeing the cause of action. So, Your Honor, addressing some of the questions that came about... Well... First, I'd like to say, though, that... now I'm confused. Because... if the... if the defendant is standing up here and saying in front of you, yes, there's a joint venture as to the eight properties, what are we even doing here? Because there's a joint venture. Our only burden is to show that there's a set of facts that establishes that there's a cause of action. We don't have to allege all the properties that are contained within it. That's an issue to be tried and for... to be determined by the charge of fact. And that damages issues. So... based on that alone, it should be reversed. There is a joint venture. We should be able to go forward and have a trial. And at that point, then the defendant... the court can decide whether or not it's only those eight properties or it's the 31 that we allege. What happened to all these other properties that kept falling by the wayside in your subsequent... Well, there was... At first, we lost how many? The first one, there was a partition. It was filed as a partition. And those properties, the bookkeeper had prepared all the properties that were... that were involved and then included those properties as Angel Auto. So we conceded that those properties that were part of Angel Auto that had been involved in that settlement should be removed from there. And so that's why we took those out. And there was a misrepresentation as to in that deposition that it wasn't... It didn't play out as that, oh, in the middle of the deposition, I said, I want to amend this now. What was said was that we're going to... There was a question about one of those partnership properties. And I, off the record, had said, you know, we're going to go ahead and amend later on. And then it was at Councils and Citizens that I do it now that that was caused. So there was... That's how that came about. And then the... So that's when we cleaned up and removed those. And then I don't know why there was four more or if there was four more that dropped off after the second amended complaint. You filed your first complaint in 2011, 15? 2012. 2012, your first complaint in this action, right? Mm-hmm. Okay. What has changed since that day with respect to your cause of action? Oh, what do you... I'm sorry, I don't understand. What has changed with respect to the cause of action you have today versus the cause of action you said you had in 2012? Anything? No, Your Honor. It's the same cause of action. And we've since that same... From the one that was filed initially from the first... That was because it was alleged that it was a partition. Okay. And so we acknowledge that there was no actual ownership interest in those properties that allow for a partition because it was titled in the defendant's name alone. So that's why we proceeded on that year. But factually... Okay, so that's what... But factually, nothing's changed. You could have filed this action in 2012. Okay, sure. And it's 2019. Yes, but Your Honor, we filed that action, though. It was... That amended to include that joint venture. That was filed four months after it was originally filed. The only thing that's changed from each complaint is that the theory hasn't changed. It was just that there were certain properties that were moved. But again, we only have to prove that there's a set of facts that can establish the existence of the joint venture and counsel came up here and said that, yeah, there was. Your Honor, there was this... By affirming it, it really leaves... Gives a windfall to defendants because the defendant does say that... Agrees that there are these eight properties in which they have an interest in their share in their profits. And just to point out one of the things that's said about, oh, well, now you come... This was in 2000 and you come in 2012 and domain sharing of profits in this length of time had passed. But our allegations are that there had been a sharing of profits the entire time. It's just now there was a refusal to account for those profits. So, Your Honor, if you affirm this trial court's decision, then the defendant has a windfall of these properties that are still going because by the trial court's decision, it says, oh, there's no joint venture. So we're not even going to enforce... You're going to be barred from even enforcing this 2008 agreement. And I don't think that the law is that... That we have to assert those properties. And, Your Honor, so we ask for those reasons that you reverse the trial court's decision and remand as well as... For those reasons, the next time I'm going to brief again. Thank you, Your Honor. Thank you, Ms. Ostrom. Thank you, Ms. Johnson. And we'll take this matter under advisement.